UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

COUSINS SUBMARINES, INC., and
COUSINS SUBS SYSTEMS, INC.,

    Plaintiffs,

v.

FEDERAL INSURANCE COMPANY,

    Defendant.

Case No. 12-CV-387-JPS

ORDER

    The Court held a trial in this matter, and the jury returned a verdict in favor of the plaintiffs, Cousins Submarines, Inc., and Cousins Subs Systems, Inc. (collectively, "Cousins"). (Docket #146, #147). The defendant, Federal Insurance Company ("Federal"), thereafter filed a motion for a directed verdict. (Docket #154). The parties have now fully briefed that motion. (Docket #155, #157, #160). Having reviewed the parties' submissions, the Court determines that it is obliged to deny Federal's motion for a directed verdict.

1.     BACKGROUND

    This insurance coverage dispute traces back several years and includes a prior federal lawsuit. The full scope of the facts is addressed in greater detail in the Court's February 8, 2013 order on summary judgment. (Docket #58).

    The larger situation began when Cousins engaged in negotiations with several third parties who wished to open Cousins franchises in Indiana. The third parties even opened a number of franchise locations, but sales fell far below initial estimates provided by Cousins. The relationship between Cousins and the third parties soured very quickly and ended up in Court.

In fact, Cousins took the first legal action and sued the third parties in Federal Court in the Eastern District of Wisconsin. Judge Charles N. Clevert presided over that action, case number 09-CV-336. In short order, the third parties filed a number of counterclaims against Cousins.

Cousins sought coverage from Federal, its insurance provider, but Federal declined to provide coverage stating that the losses stemmed from exclusions in the parties' insurance contract, Exclusion (C)(2) and Exclusion (C)(8). Exclusion (C)(2) provided that Federal would not be responsible to cover losses "based upon, arising from, or inconsequence of any actual or alleged liability…under any written or oral contract or agreement." Exclusion (C)(8), meanwhile, excluded from coverage losses stemming from various forms of unfair business practices.

Thus, the underlying suit proceeded forward with Cousins aware that Federal was declining to provide coverage. At the summary judgment stage, Judge Clevert narrowed Cousins' and the third parties' claims against each other.

Thereafter, Cousins paid the third parties $750,000.00 to settle the third parties' counterclaims against them (though, it was relevant at trial, $150,000.00 of the settlement had been paid by an associate of Cousins).

Cousins then filed the case at hand in Waukesha County Circuit Court seeking a declaration that Federal should be liable to cover Cousins' losses from the settlement. Federal, however, removed the matter to this Court on April 27, 2012, on diversity grounds. After a period for discovery, the parties filed cross-motions for summary judgment on December 18, 2012.

The Court addressed those motions in a February 8, 2013 order in which it granted in part and denied in part both parties' motions. The order substantially limited the scope of issues for trial. The order held that

Exclusion (C)(2) applied to a large portion of the third parties' claims against Cousins, thus barring Cousins from recovering amounts attributable to those claims. However, the Court also held that Exclusion (C)(8) did not apply to the third parties' claims.

In the end, the most relevant of the Court's determinations was that the third parties' claims for rescissory damages were not excluded by either Exclusion (C)(2) or Exclusion (C)(8). Accordingly, the Court found that there was a factual issue for trial: what portion of the settlement between Cousins and the third parties should be attributed to rescissory damages, and what portion should be attributed to the rest of the claims (which the Court determined were excluded by Exclusion (C)(2)).[1]

The parties proceeded to trial, at which a jury found that the entire $750,000.00 settlement was attributable to the third parties' rescissory damages claim against Cousins in the underlying action. Of course, because Cousins had paid only $600,000.00 of the claim, the final verdict found that Cousins should be entitled to only $600,000.00 of coverage from Federal.

Federal has now filed a motion for a directed verdict, requesting that the jury's verdict be set aside. The parties have briefed the matter, and it is ripe for decision.

2.  DISCUSSION

   2.1   Standard of Review

In this diversity case, the court must apply the law of Wisconsin, the forum state, in deciding a post-verdict motion for judgment. *See, e.g.*, *Nunley*

---

[1] In its summary judgment order, the Court also held that damages could be recovered for amounts expended in a "string-along" period prior to Cousins' actually entering a contract with the third parties. Cousins stipulated prior to trial that none of the settlement was attributable to such amounts and, therefore, the Court will ignore that portion of its analysis for purposes of this order.

*v. Kloehn*, 888 F. Supp. 1483, 1485 (E.D. Wis. 1995) (citing *Jackson v. Bunge Corp.*, 40 F.3d 239, 242 (7th Cir. 1994); *Krist v. Eli Lilly & Co.*, 897 F.2d 293, 297 (7th Cir. 1990); *Pincus v. Pabst Brewing Co.*, 893 F.2d 1544, 1548–49 (7th Cir. 1990)). However, the Wisconsin standard of review for a directed verdict under Wis. Stat. § 805.14 is practically the same as the standard of review under Federal Rule of Civil Procedure 50(b), under which the Court must review motions for judgment as a matter of law. *Nunley*, 888 F. Supp. at 1485; *see also In the Matter of Innovative Construction Sys., Inc.*, 793 F.2d 875, 881 n. 5 (7th Cir. 1986). Under this standard, the Court should not grant a directed verdict unless it determines that "there is no credible evidence that could sustain a finding in favor of the nonmoving party [here, Cousins]"; in making that determination, the Court must consider all of the credible evidence and reasonable inferences in a light most favorable to Cousins. Wis. Stat. § 805.14(1).

2.2 Analysis

Federal argues that a directed verdict is appropriate for three reasons. First, Federal asserts that the Court erred at the summary judgment stage in determining that rescissory damages do not "arise from" a contract under Wisconsin law and, therefore, were not excluded from coverage by Exclusion (C)(2). Second, it posits that, under Wisconsin law, the rescissory damages claim no longer existed at the time of settlement, thus making any attribution of the settlement amount to the rescissory damages claim a legal impossibility. Finally, Federal argues that Cousins did not carry its burden to show that the settlement amount was attributable to the rescissory damages claim.

### 2.2.1 Rescissory Damages Do Not "Arise From" a Contract

Federal's first argument, that the Court should render a directed verdict in its favor because rescissory damages do not "arise from" a contract, most resembles a motion for reconsideration of the Court's prior summary judgment order. It does not seek any analysis of the evidence or jury verdict, but instead seeks only a re-examination of the Court's legal conclusions at summary judgment. Cousins is correct in that regard.

Nonetheless, the Court may still analyze the argument at this stage, as it must apply Wisconsin law, which allows for review of issues raised at the summary judgment stage, as Federal correctly points out. (Docket #160, at 4 (citing *Chevron Chem. Co. v. Deloitte & Touche*, 168 Wis. 2d 323, 339-40, 483 N.W.2d 314, 320-21 (Ct. App. 1992), *aff'd and remanded*, 176 Wis. 2d 935, 501 N.W.2d 15 (1993)). However, with that said, the Court notes that it would have been much better to ask for this form of review immediately after entry of the summary judgment motion. In the case that the Court erred in reaching its legal conclusions, as Federal asserts, then it would have saved everyone significant time and money to have known that before proceeding through a jury trial.

That is ultimately irrelevant, though, as the Court does not believe it erred in reaching its legal conclusions on the meaning and application of Exclusion (C)(2). Federal argues that the Court's application of Exclusion (C)(2) was incorrect because the Court interpreted it to apply whenever the claim itself could not exist without a contract. (*See, e.g.*, Docket #155, at 6–7). That, however, is not precisely what the Court held. Rather, the Court held that the claim must "arise from" a contract, or "trace to the existence of a contract," which the Court views as slightly different. (*See, e.g.*, Docket #58, at 15). Simply because a rescissory damages claim may require the existence

of a contract does not mean that the claim necessarily "arises from" the contract. Indeed, that is the very import of the Wisconsin Supreme Court's language stating that rescissory damages "do not arise from a contract, but from a wrongful act such as fraud in the inducement." *Wickenhauser v. Lehtinen*, 2007 WI 82 ¶ 17, n. 4, 302 Wis. 2d 41, 734 N.W.2d 855 (citing *Head & Seemann, Inc. v. Gregg*, 104 Wis.2d 156, 165–67, 311 N.W.2d 667 (Ct. App. 1981), *aff'd and adopted*, 107 Wis.2d 126, 127, 318 N.W.2d 381 (1982); *Roberts v. Sears, Roebuck & Co.*, 573 F.2d 976, 985 (7th Cir. 1978), *cert. denied*, 439 U.S. 860, 99 S.Ct. 179 (1978)). That is, according to the Wisconsin Supreme Court, rescissory damages do not have their root in the contract, but in the wrongful act. Federal takes issue with the Wisconsin Supreme Court's statement of such, as well as the Court's reliance upon it, but Federal does not point to any case law that clearly contradicts or calls into question that authority. Accordingly, the Court does not believe it would be appropriate to issue a directed verdict on this basis.

### 2.2.2   Legal Impossibility of Rescissory Damages

Federal's second argument stems from the settlement agreement Cousins entered into with the third parties. Federal points out that the settlement agreement allowed the third parties to "pursue the collection of all damages, including compensatory, statutory, and punitive damages," in the case that Cousins reached an "Avoidance Event," such as entering bankruptcy. (Docket #155, at 9–10). According to Federal, by allowing the third parties to retain a right to sue for damages, Cousins necessarily affirmed the contract. (Docket #155, at 10 (citing *Schlotthauer v. Krenzelok*, 274 Wis. 1, 5, 79 N.W.2d 76, 78–79 (1956))). And, Federal argues, as a result of that affirmance, Cousins could no longer rescind the contract, therefore making the entirety of the settlement amount attributable to the non-rescissory
Page 6 of 10
Case 2:12-cv-00387-JPS   Filed 06/13/13   Page 6 of 10   Document 161

damages claims. (Docket #155, at 9 (citing RESTATEMENT (SECOND) OF CONTRACTS § 380(2) (1981); *Schlotthauer v. Krenzelok*, 274 Wis. at 5, 79 N.W.2d at 78-79; *Stadler v. Rohm*, 40 Wis. 2d 328, 336, 161 N.W.2d 906, 909-10 (1968); *Gaugert v. Duve*, 217 Wis. 2d 164, 173, 579 N.W.2d 746, 751 (Ct. App. 1998))).

This complex reasoning misses a simple fact of timing: even under Federal's (tortured) logic, the settlement was made while the rescissory damages claim was still viable and, therefore, some portion of the settlement could logically be apportioned to that claim. Federal argues that the rescissory damages claim was extinguished by the settlement; that may be true, but it does not change the fact that some portion of the settlement was still attributable to the rescissory damages claim. Simply put, at the time of the settlement, the rescissory damages claim was still viable. *Even if* there were an affirmance, it occurred only upon adoption of the settlement agreement. Therefore, some portion of the settlement could legally have been attributable to the rescissory damages claim.

To the extent that Federal argues the affirmance occurred earlier than the moment the parties formally agreed to enter the final version of the settlement agreement—for instance, at the time the agreement to allow future pursuit of damages was inserted into the contract—that argument must also fail. It seems that, here, Federal would like the Court to find that the settlement took legal effect before it was actually fully binding upon the parties. But a rule of that sort could encourage defendants in contract cases, such as Cousins, here, to engage in preliminary settlement negotiations as a method of extracting a tentative agreement that could later be used as an affirmance of the contract, in order to extinguish any rescissory damages claims. From a public policy standpoint, parties should be free to negotiate a settlement. If they were to be concerned during negotiations that the

addition of language into a settlement agreement could negate a viable claim simply by tentative adoption, then those negotiations would be much less open. Thus, to the extent that Federal wishes the Court to adopt a rule allowing the legal effect of the settlement to take effect before the settlement itself was binding upon the parties, that argument fails.

In sum, Federal is incorrect to assert that the settlement could not be attributable to the rescissory damages claim. When Cousins settled with the third parties, they agreed to dispose of all of the claims that existed at the moment prior to settlement. That included a rescissory damages claim. Only after the settlement was binding could the agreement have had the legal effect of affirming a contract, such that it would extinguish a right to seek rescissory damages.[2] Therefore, the Court must decline to grant a directed verdict on this ground.

### 2.2.3 Burden of Proof

Federal's final argument also fails. In this argument, Federal asks the Court to hold that Cousins failed to establish that the entire settlement should be attributed to the rescissory damages claim. Federal has a high standard to meet to convince the Court of that. As mentioned above, the

---

[2] As a side note, the Court does not necessarily agree with Federal's argument that the settlement effectively affirmed the contract. The fact that Cousins agreed that the third parties may pursue damages after the settlement does not necessarily mean that the third parties *would* recover those damages if they were to seek them or that Cousins admitted the existence of a contract. Rather, the settlement language seems merely to allow the third parties to reassert their multiple claims against Cousins (or to, perhaps, seek full repayment of outstanding settlement amounts). More likely than not, the third parties were attempting merely to secure a strong position in line, in the case of a bankruptcy. None of this seems to have any bearing upon the existence or non-existence of a contract, and Federal fails to articulate any cognizable reason for concluding otherwise.

Court cannot grant a directed verdict unless it determines that "there is no credible evidence" to support Cousins' claims. Wis. Stat. § 805.14(1).

That is simply not the case here. At trial, two attorneys involved in the underlying action, Fredric Cohen and Mark Leitner, testified that the rescissory damages claims were very important in the settlement negotiations. Perhaps this is not the strongest of evidence—indeed, written memoranda or other contemporaneous statements of attribution would have been *extremely* persuasive—but that is not the question. Rather, we must ask whether there was credible evidence to support Cousins' claims. And, indeed, those attorneys' testimony regarding the strength of the rescissory damages claims was credible evidence to support Cousins' claims in this case. Therefore, a directed verdict would be inappropriate.

Finally, the Court also notes that it understands the difficulty of Federal's position. In a sense, Federal was charged with arguing against an attribution when there were no contemporaneous documents available. But, in that sense, Federal was hoist by its own petard. Federal decided not to participate in the settlement proceedings beyond offering a *de minimis* amount of money. Thus, Cousins proceeded ahead, alone, with its own counsel, who negotiated a settlement that did not specify how the settlement should have been apportioned by ratio or cash amount. Surely, as an insurance provider, Federal had a distinct interest in ensuring that the allocation of losses was clearly set forth, so that it could avoid the very situation it now finds itself in: arguing over attribution of losses between claimed and uncovered claims. But, no, Federal played hardball, and declined to even participate in the settlement negotiations. Obviously, that was their right. But, now that evidence has been presented in favor of Cousins' argued-for allocation without any rebuttal evidence by Federal, the

Page 9 of 10

Case 2:12-cv-00387-JPS    Filed 06/13/13    Page 9 of 10    Document 161

Court has little doubt that Federal wishes its representatives had been present at the negotiations to ensure a breakdown of the allocations had been prepared. Perhaps, going forward, Federal will view its obligations to its insured as also benefitting itself, and engage those duties in a more meaningful way. For Federal to now object to the lack of written or specific verbal evidence (Docket #160, at 8) is a bit disingenuous, given Federal's decision not to be a party to any of the written or verbal communication.

Having found that Cousins produced credible evidence to support its claims, the Court is obliged to deny Federal's motion for a directed verdict on this argument, as well.

3. CONCLUSION

Therefore, having rejected each of Federal's three arguments in favor of a directed verdict, the Court is obliged to deny Federal's motion in its entirety.

Accordingly,

IT IS ORDERED that Federal's motion for a directed verdict (Docket #154) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 13th day of June, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge